*By attorney for Plaintiffs:*

Lindsey Schromen-Wawrin, WSBA # 46352
Shearwater Law PLLC
Community Environmental Legal Defense Fund
306 West Third Street, Port Angeles, WA 98362
(360) 406-4321, lindsey@world.oberlin.edu

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WASHINGTON
## SPOKANE DIVISION

| | |
|---|---|
| **Dr. Gunnar Holmquist,** *et al.* | No. 2:17-cv-00046-TOR |
| Plaintiffs, | **Plaintiffs' Response to Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction and Failure to State a Claim** |
| v. | |
| **United States,** | *Oral Argument per Dkt. No. 13: July 12, 2017, 9 am, Ct. Rm. 902* |
| Defendant. | |

## PLAINTIFFS' RESPONSE TO MOTION TO DISMISS

May 9, 2017

Response to Motion to Dismiss – 1 of 37

## Table of Contents

Introduction.......................................................................................................4

Statement of the Facts.......................................................................................5

Standard of Review...........................................................................................6

Argument...........................................................................................................7

   I.  Plaintiffs have stated a cognizable claim that ICCTA preemption violates
      their constitutional rights................................................................................7

    A. Count One – Right to a Liveable Climate....................................................7

      1.  Plaintiffs possess a federal, fundamental constitutional right to a liveable
         climate.......................................................................................................7

      2.  ICCTA's exclusive preemption scheme violates Plaintiffs' right to a
         liveable climate by preventing them from using their government to enact
         laws to protect that right............................................................................11

    B. Counts Two and Three – Right of Local Community Self-Government....14

      1.  Plaintiffs possess a state and federally-guaranteed constitutional right of
         local community self-government.............................................................14

      2.  ICCTA's exclusive preemption scheme violates Plaintiffs' right of local
         community self-government by preventing them from making laws to
         protect their rights, health, safety, and welfare.........................................21

  II. Plaintiffs have standing to challenge ICCTA's scheme of preemption because
      that scheme prohibits them from exercising their right of self-government to
      protect their right to a liveable climate........................................................22

    A. Injury in Fact...............................................................................................23

      1.  ICCTA's prohibition of local lawmaking guarantees a violation of the
         Plaintiffs' constitutional right to a liveable climate, and directly prohibits
         them from exercising their right of local self-governance to protect
         themselves from climate change...............................................................24

2.  Plaintiffs have been injured by the environmental impacts of fossil fuel trains passing through Spokane, including through local air pollution and spill or explosion risks, as well as through increases in global greenhouse gas concentrations.....................................................................................25

B.  Causation....................................................................................26

C.  Redressability............................................................................30

III. Sovereign immunity does not bar Plaintiffs' claims because this Court can grant the necessary relief..............................................................31

Conclusion.........................................................................................33

Appendix: 1910 Spokane City Charter Provisions...................................34

Certificate of Service............................................................................37

**Introduction**

In their Complaint, Plaintiffs assert that federal preemption in the Interstate Commerce Commission Termination Act of 1995, as applied, violates their constitutional rights, in two ways. First, it violates their right to a liveable climate by preventing them from enacting local laws to stop the rail shipment of fossil fuels that cause climate change. Second, it violates their right to govern their local communities by preventing them from enacting local laws to regulate such shipments.

The United States moves to dismiss the Complaint on three grounds, none persuasive. First, it argues that Plaintiffs' have failed to state a claim. But Plaintiffs' clearly have articulated all of the elements of their claims in their Complaint, and need not prove them at this stage.

Second, the United States argues that Plaintiffs have not been directly harmed by the federal law and thus lack standing. But Plaintiffs' Complaint adequately alleges that the federal law has blocked their efforts to enact local legislation to regulate rail shipments, and thus, has guaranteed a violation of their constitutional right to a liveable climate.

Third, the United States argues that sovereign immunity blocks Plaintiffs' claims. But sovereign immunity does not protect the government from claims for violation of constitutional rights.

**Statement of the Facts**

The United States' Interstate Commerce Commission Termination Act of 1995 ("ICCTA") prohibits the people of Spokane (and any other municipality) from adopting any local laws that would prohibit fossil fuel transportation by rail. *See* 49 U.S.C. § 10501; Compl. Attachments Two and Three (ECF No. 1-2 at 3-5 and No. 1-3 at 3-8) (city hearing examiner legal memos, including a section in the second memo, at 6, with the heading "[The proposed local law] is preempted by federal law even though the measure is expressly intended to ensure public safety and prevent environmental damage."). Thus, ICCTA preemption prohibits the people of Spokane from taking local legislative action to reduce climate change and protect their health and safety. *See id.* It thus leaves them without a remedy to protect their right to a liveable climate, or to exercise their right of local self-governance to protect that right.

Plaintiffs have individually attempted to protect their right to a liveable climate by stopping the rail transportation of coal and oil through Spokane. (Compl., ¶¶ 1-7, 13-18.) Plaintiff Dr. Gunnar Holmquist introduced an initiative to prohibit fossil fuel trains within the City of Spokane. (*Id.*, ¶¶ 17-18; *see also* initiative text at ECF No. 1-1.) The four Plaintiffs who reside in Spokane would vote on this initiative. (*id.*, ¶¶ 1, 5-7.)

Because of ICCTA's preemption provisions, the local initiative cannot be

1   placed onto the ballot (*see* City of Spokane Hearing Examiner memo, ECF No. 1-2

2   at 1-7), and the Plaintiffs are therefore deprived of voting on the initiative or

3   adopting it into law.

4                                 **Standard of Review**

5        In a motion to dismiss, the Complaint is construed in favor of the Plaintiff,

6   and all factual allegations are accepted as true. *E.g.*, *Manzarek v. St. Paul Fire &*

7   *Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008) (citation omitted). "[O]nce a

8   claim has been stated adequately, it may be supported by showing any set of facts

9   consistent with the allegations in the complaint." *Bell Atl. Corp. v. Twombly*, 550

10   U.S. 544, 563 (2007) (citations omitted).

11        For a motion to dismiss for failure to state a claim, the Plaintiff must prevail

12   if there is any plausible existence of a claim. *E.g.*, *OSU Student Alliance v. Ray*,

13   699 F.3d 1053, 1061 (9th Cir. 2012). In addition, courts should be "especially

14   reluctant to dismiss on the basis of the pleading when the asserted theory of

15   liability is novel or extreme, since it is important that new legal theories be

16   explored and assayed . . . ." 5A Wright & Miller, Federal Practice and

17   Procedure § 1357 at 343 (2d ed. 1990).

**Argument**

**I.    Plaintiffs have stated a cognizable claim that ICCTA preemption violates their constitutional rights.**

Defendant United States argues under Rule 12(b)(6) (failure to state a claim) that none of Plaintiffs' claims are legally cognizable by this Court, or if they are, that Plaintiffs do not plausibly allege a violation. (ECF No. 11 (hereinafter "MTD") at 23-30.)

The U.S. argues that the federal government has an interest in preempting state and local laws that interfere with a uniform system of interstate commerce. (MTD at 8.) Plaintiffs assert that federal preemption violates their constitutional right to a liveable climate because the federal law prohibits their ability to make laws to secure and protect that right. In asserting that the federal law violates their constitutional rights and must be struck, the Plaintiffs have stated cognizable claims that easily survive this motion to dismiss.

**A.    Count One – Right to a Liveable Climate**

**1.    Plaintiffs possess a federal, fundamental constitutional right to a liveable climate.**

Plaintiffs assert that they possess a right to a liveable climate. (Compl., ¶¶ 30-42, 51-54.) The U.S. denies that this right exists. (MTD at 23-26.) Thus, the first question for this Court in addressing whether Plaintiffs' Count One survives a motion to dismiss is determining whether there is a right to a liveable climate, or

whether the Plaintiffs have stated a cognizable claim that such a right should exist. If either, the Plaintiffs have stated a viable claim, and the Defendant's motion must be denied.

Recently, a U.S. District Court in Oregon held that the people of the United States possess a fundamental, federally-protected constitutional right to a liveable climate. *Juliana v. United States*, 46 E.L.R. 20175, No. 6:15-cv-01517-TC (D. Or., Nov. 10, 2016). In denying the federal government's motion to dismiss the plaintiffs' claims that the federal government's inaction on climate change were violating their right to a liveable climate, Judge Aiken reasoned that a "stable climate system is quite literally the foundation 'of society, without which there would be neither civilization nor progress.'" *Id.* (quoting *Obergefell v. Hodges*, 135 S. Ct. 2584, 2598 (2015)). Thus, people possess a fundamental constitutional right to a "climate system capable of sustaining human life" as it is "fundamental to a free and ordered society." *Id.* "Just as marriage is the 'foundation of the family,' a stable climate system is quite literally the foundation 'of society, without which there would be neither civilization nor progress.'" *Id.* (quoting *Obergefell*, 135 S. Ct. at 2601).

The *Juliana* court explained this right:

> Defendants and intervenors contend plaintiffs are asserting a right to be free from pollution or climate change, and that courts have consistently rejected attempts to define such rights as fundamental. Defendants and intervenors mischaracterize the right plaintiffs assert. Plaintiffs to not

object to the government's role in producing *any* pollution or in causing *any* climate change; rather, they assert the government has caused pollution and climate change on a catastrophic level, and that if the government's actions continue unchecked, they will permanently and irreversibly damage plaintiffs' property, their economic livelihood, their recreational opportunities, their health, and ultimately their (and their children's) ability to live long, healthy lives. Echoing *Obergefell's* reasoning, plaintiffs allege a stable climate system is a necessary condition to exercising other rights to life, liberty, and property.

The *Juliana* court held that such a claim states a due process violation. "To hold otherwise would be to say that the Constitution affords no protection against a government's knowing decision to poison the air its citizens breathe or the water its citizens drink." *Id.*

Judge Aiken's ruling stands on firm ground. The United States' Constitution's due process clause protects substantive fundamental rights that are "implicit in the concept of ordered liberty" or "deeply rooted in this Nation's history and tradition." *McDonald v. City of Chicago,* 561 U.S. 742, 761, 767 (2010) (citations and quotations omitted). In addition, the Constitution's Ninth Amendment specifically recognizes the existence of non-enumerated rights: "The enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people."

Here, Plaintiffs assert that they have a right to a liveable climate, and that the right is protected by the U.S. Constitution. (Compl., ¶¶ 30-42, 51-54.) They plead:

30. Global warming of the Earth's air and ocean temperatures has been steadily increasing the past 100 years, due primarily to human activities

that increase atmospheric greenhouse gas concentrations. This is established scientific fact, undisputed among all credible science institutions worldwide.

31. The consequences of global warming and increased atmospheric greenhouse gas concentrations are already seen, including ocean acidification causing widespread coral bleaching and declining fisheries, rising sea levels with human displacement, chaotic weather patterns with record heat waves, droughts, fires, superstorms, and flooding, destabilizing agricultural systems, and ecosystem disruptions that are producing a sixth mass species extinction. These factors combined threaten the continued survival of human society.

32. The combustion of fossil fuels is the primary direct cause of this global climate change.

33. Continued combustion of fossil fuels will exacerbate global climate change and its consequences.

34. Extraction of fossil fuels, and their transportation to different locales for combustion, is a contributing factor to the combustion of fossil fuels, and thus, to global climate change.

35. Global climate change represents a threat to the continued survival of human society, and is causing the mass extinction of other species.

. . .

39. Global climate change threatens the Plaintiff's property, their economic livelihood, their recreational opportunities, their health, and ultimately their (and their children's) ability to live long, healthy lives.

40. A stable climate system is a necessary condition to exercising the Plaintiffs' rights to life, liberty, and property.

41. The people of the City of Spokane, including the Plaintiffs in this action, possess a fundamental constitutional right to a climate capable of sustaining and fostering life.

42. The right to a climate capable of sustaining and fostering life is fundamental to a free and ordered society.

Response to Motion to Dismiss – 10 of 37

. . .

52. The Plaintiffs possess a fundamental federally-guaranteed constitutional right to a liveable climate.

53. A liveable climate is one which is capable of sustaining and fostering life on the planet.

54. A stable climate system is a necessary condition for the Plaintiffs to exercise their other rights to life, liberty, and property.

Of course, the Constitution does not expressly say anything about the stability, health, or liveability of the climate. That is not surprising, given that scientists did not begin to study the atmosphere's physics and chemistry until the 19th century. *E.g.*, Ed Hawkins, *A brief history of climate science*, THE CONVERSATION (Sept. 30, 2013).[1]

But certainly, a right to a liveable climate – at its basis, a right to life – is a more essential due process right than other non-enumerated rights that have been recognized as requiring fundamental constitutional protections. Those include the right to interstate commerce and the right to privacy. *E.g.*, *Baldwin v. G. A. F. Seelig, Inc.*, 294 U.S. 511 (1935); *Griswold v. Connecticut*, 381 U.S. 479 (1965). There is neither commerce nor privacy on a planet incapable of sustaining life.

**2.    ICCTA's exclusive preemption scheme violates Plaintiffs' right to a liveable climate by preventing them from using their government to enact laws to protect that right.**

In their Complaint, Count One, Plaintiffs assert that:

_____

1  *Available at* theconversation.com/a-brief-history-of-climate-science-18578.

55. The continued transportation of fossil fuels through the City of Spokane by rail transportation violates the Plaintiffs' fundamental, federally-guaranteed constitutional right to a liveable climate.

56. As part of the Plaintiffs' right to a liveable climate, they possess a constitutional right to defend themselves against violations of that right.

57. The preemption provisions of [ICCTA] prevent the Plaintiffs from securing their right to a liveable climate, and guarantee the violation of that right.

58. The preemption provisions of the ICCTA violate the Plaintiffs fundamental, federally-guaranteed right to a liveable climate.

59. ICTTA's infringement of the constitutional right of the Plaintiffs to a liveable climate is not necessary to serve a compelling state interest, and, therefore, is unconstitutional.

In considering a Rule 12(b)(6) motion for purported failure to state a claim, the Court cannot assess the merits of the claim, but rather must solely examine whether it is legally cognizable on its face. *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984) (citation omitted).[2]

The railway that passes through Spokane enables supplies of coal, oil, and natural gas to be extracted from the center of North America and exported through the terminals on the coast of the Pacific Northwest, for combustion in utilities in

---

2   Thus, it is premature for the Court to actually do the strict scrutiny analysis at this stage; *i.e.*, to decide whether "ICCTA's infringement of the constitutional right of the Plaintiffs to a liveable climate is not necessary to serve a compelling state interest, and, therefore, is unconstitutional." (Compl., ¶ 59.) That determination waits for a motion for judgment on the pleadings or summary judgment, when the Court has climate change evidence (or the Defendant's Answer), or can take judicial notice of legislative and scientific facts relevant to this case. *See Heliotrope Gen., Inc. v. Ford Motor Co.*, 189 F.3d 971, 981 n. 18 (9th Cir. 1999).

Asia and other regions. Rail transportation of those fossil fuels, as one link in the extraction and combustion cycle, facilitates the destabilization of the global climate and threatens life on this planet, which depends on a healthy climate.

Plaintiffs seek to defend themselves and their community from this harm by stopping that harm from occurring: by prohibiting the rail transportation of fossil fuels through the City of Spokane. ICCTA preemption has directly prevented the Plaintiffs from curtailing fossil fuel transportation and extraction by prohibiting these trains, and thus, ICCTA prevents Plaintiffs from securing their right to a liveable climate.

Plaintiffs concede that their right to a liveable climate is not infringed by government laws that are necessary to secure a compelling interest. (Compl., ¶ 59.) But the government's interest must be more compelling than, say, mitigating the sixth mass extinction event in the Earth's history. *See, e.g.*, Elizabeth Kolbert, THE SIXTH EXTINCTION: AN UNNATURAL HISTORY (2014). Here, the U.S. has only claimed that ICCTA preemption is necessary to maintain a uniform regulatory system for interstate rail transportation. (MTD at 8.) Maintaining uniform regulation of interstate rail transportation is unimportant compared to mitigating mass extinction and maintaining a climate that supports human societies.

Plaintiffs are not challenging ICCTA preemption in all circumstances. Rather this is an as-applied challenge to ICCTA preemption when it prevents Plaintiffs

from protecting a liveable climate by stopping the transportation of fossil fuels by rail through their city.[3] The United States' lawful authority ends where Plaintiffs' fundamental constitutional rights begin.

### B.   Counts Two and Three – Right of Local Community Self-Government

The U.S. asserts that Plaintiffs have failed to state a claim that their right of local self-governance has been violated. (MTD at 28-30). Plaintiffs possess a state and federally-guaranteed constitutional right of local community self-government, and have stated a cognizable claim that ICCTA preemption violates that right.

### 1.   Plaintiffs possess a state and federally-guaranteed constitutional right of local community self-government.

The American system of government is founded on the principle that governments exist to protect people's rights, safety, and happiness, as explained in The Declaration of Independence (U.S., 1776):

> We hold these truths to be self-evident, that all men are created equal, that they are endowed by their Creator with certain unalienable Rights, that among these are Life, Liberty and the pursuit of Happiness. That to secure these rights, Governments are instituted among Men, deriving their just powers from the consent of the governed, – That whenever any Form of Government because destructive of these ends, it is the Right of the People to alter or to abolish it, and to institute new Government, laying its foundation on such principles and organizing its powers in such form, as to them shall seem most likely to effect their Safety and Happiness.

---

3  Plaintiffs' actions and proposed lawmaking to stop fossil fuel trains in Spokane is described below in Section II.A, at 23, and also at Compl., ¶¶ 1-7, 17-18. ICCTA's causative role is described below in Section II.B, at 26, and also at ECF No. 1-2 at 3-5.

1   At the time of the American Revolution, the people possessed the right of local

2   community self-government. *E.g.*, James E. Herget, *The Missing Power of Local*

3   *Governments: A Divergence Between Text and Practice in Our Early State*

4   *Constitutions*, 62 VA. L. REV. 999 (1976). They retained that right through the

5   adoption of the United States Constitution,[4] both in the express text of the

6   Constitution, and the principles of constitutional federalism. *E.g.*, U.S. CONST.

7   amend. IX ("The enumeration in the Constitution, of certain rights, shall not be

8   construed to deny or disparage others retained by the people.").

9       But in the late 19th century, the courts began to erode that right by adopting

10  new doctrines, like Dillon's Rule, which turned local government lawmaking from

11  a political right into a gift from the states. *Compare St. Louis v. W. Union Tel. Co.*,

12  149 U.S. 465, 468 (1893) (holding a charter city is an "imperium in imperio" (a

13  state within a state)) *with Hunter v. City of Pittsburgh*, 207 U.S. 161, 178-79 (1907)

14  ("Municipal corporations are political subdivisions of the State, created as

15  convenient agencies for exercising such of the governmental powers of the State as

16  may be entrusted to them. . . . in the absolute discretion of the State. . . . The State,

17  therefore, at its pleasure may . . . destroy the corporation. All this may be done,

18  conditionally or unconditionally, with or without the consent of the citizens, or

19  even against their protest."); *see also, for historical development*, Hugh Spitzer,

20  *"Home Rule" vs. "Dillon's Rule" for Washington Cities*, 38 SEATTLE U. L. REV.

4   As an *inalienable* right, they could not have done otherwise.

809 (2015) (advocating that Dillon's Rule should be discarded). The courts also

broadly interpreted the U.S. Supremacy Clause to preempt all conflicting state or

local law, even if the federal law in question barred the use of those laws to expand

the civil and political rights of the people.

The courts' actions did not stop the people of Washington from continuing to

assert their right of local community self-government. When drafting Washington's

Constitution in the late 1880's, the state constitution's framers were particularly

concerned about corporate power over democratic government and people's rights:

> The growth of power, and the arrogant disregard of laws and the rights of the people, by corporations made the question of limiting corporate power one of the most vital and earnestly discussed questions before the constitutional convention. The members were keenly awake to the situation, and knew that the growth and menacing attitude of this unscrupulous power must be curbed in some way.

Lebbeus J. Knapp, *The Origin of the Constitution of the State of Washington*,

4 WASH. HIST. Q. 227, 239 (1913).[5]

Thus, the framers and the people adopted constitutional provisions based on

Indiana's Constitution.[6] At that time, the Indiana Supreme Court had interpreted

that state's constitution to provide a right of local self-government. *Indiana ex rel.*

---

5  *Available at* lib.law.washington.edu/waconst/Sources/Knapp.pdf.

6  "It is well-known that the delegates to the Washington Convention borrowed heavily from the constitutions of other states. The Washington Declaration of Rights, for example, was largely based on W. Lair Hill's proposed constitution and its model, the Oregon Constitution. The Oregon Constitution in turn borrowed heavily from the Indiana Constitution." Robert F. Utter & Hugh D. Spitzer, THE WASHINGTON STATE CONSTITUTION: A REFERENCE GUIDE 9 (2002) (citation omitted).

1  *Holt v. Denny*, 118 Ind. 449, 457-75, 21 N.E. 274 (1889). Later, even legal

2  academics who opposed the idea of an inherent right of local self-government

3  acknowledged that Indiana's courts had unequivocally held that the right existed at

4  the time the people of Washington adopted their constitution. Howard Lee McBain,

5  *The Doctrine of an Inherent Right of Local Self-Government*, 16 COLUM. L. REV.

6  190, 198 (1916) ("In the State of Indiana there can be no question that the doctrine

7  of an inherent right of local self-government has been unequivocally accepted and

8  applied . . . ." (citing *Holt*, 118 Ind. 449, 21 N.E. 274)).[7]

9      Washington's Constitution contains express terms recognizing the people's

10  power to use government to protect their rights:

11      "All political power is inherent in the people, and governments derive their

12  just powers from the consent of the governed, and are established to protect and

13  maintain individual rights." WASH. CONST. Art. I, § 1.

---

7  State supreme courts in many states recognized the right of local community
self-government, which immunized certain local laws from state preemption.
*People v. Hurlbut*, 24 Mich. 44 (1871); *People v. Lynch*, 51 Cal. 15 (1875);
*State ex rel. Pearson v. Hayes*, 61 N.H. 264 (1881); *Rathbone v. Wirth*, 45 N.E.
15 (N.Y. 1896); *Helena Consol. Water Co. v. Steele*, 49 P. 382 (Mont. 1897);
*State v. Standford*, 66 P. 1061 (Utah 1901); *State v. Barker*, 89 N.W. 204 (Iowa
1902); *Ex Parte Lewis*, 73 S.W. 811 (Tex. Ct. Crim. App. 1903); *Schubel v.
Olcott*, 60 Or. 503, 513 (1912) ("The principle of local self-government is
regarded as fundamental in American political institutions. It is not an American
invention, but is traditional in England, and is justly regarded as one of the most
valuable safeguards against tyranny and oppression."); *Federal Gas & Fuel Co.
v. City of Columbus*, 118 N.E. 103 (Ohio 1917); *State v. Essling*, 195 N.W. 539
(Minn. 1923); *Town of Holyoke v. Smith*, 226 P. 158 (Colo. 1924);
*Commonwealth v. McElwee*, 327 Pa. 148, 193 A.628 (1937).

To try to ensure these foundational principles are not ignored, the Constitution provided that "[t]he provisions of this Constitution are mandatory, unless by express words they are declared to be otherwise." *Id.*, Art. I, § 29.

Echoing the Ninth Amendment, the Constitution provided that "[t]he enumeration in this Constitution of certain rights shall not be construed to deny others retained by the people." *Id.*, Art. I, § 30.

Further, in the Constitution, the people of Washington expressly reminded their government that "[a] frequent recurrence to fundamental principles is essential to the security of individual rights and the perpetuity of free government." *Id.*, Art. I, § 32.

The framers of Washington's Constitution attempted to reverse Dillon's Rule by including Home Rule provisions that recognized that the people of large cities (like Spokane) had the authority to enact their own charters (their own constitutions) for their local governments, thus adding a third layer to constitutional federalism. *Id.*, Art. XI, § 10.

Twenty years later, corporate control over elected officials, particularly by the railroads, was still a problem preventing the people from enacting laws to protect their rights, health, and safety. *See* Claudius O. Johnson, *The Adoption of the Initiative and Referendum in Washington*, 35 Pac. Nw. Q. 291, 294 (1944) ("Washington had had ample experience with old-time machine politicians who

1    were dominated, often bought, by the railroad companies and other corporate

2    interests. It had been found impossible, for example, to get the legislature to enact

3    a statute creating a railroad commission.").[8] [9]

4          In response to corporate control of elected officials, and thus in an attempt to

5    reclaim their right of local community self-government, the people of Spokane

6    amended their city charter to provide a mechanism for direct lawmaking by the

7    people – the initiative process. CITY OF SPOKANE CHARTER Art. IX, § 81 (as

8    adopted Dec. 28, 1910).[10] Thus, Spokane's Charter expressly contained the

9    initiative power before the people of Washington amended the state constitution to

10   expressly reserve this power for state-wide legislation. *Compare id.* (initiative

11   power in 1910) *with* WASH. CONST. Art. II, § 1 (where the people approved

12   Amendment 7 – the people's reservation of the initiative power – in November

13   1912). This reservation of direct lawmaking power is consistent with the people's

14   inherent right of local community self-government, as illustrated by the people of

15   Spokane adopting procedures for initiative lawmaking without any "authorization"

16   from the state.

---

8   *Available at* lib.law.washington.edu/waconst/Sources/Johnson.pdf.

9   In addition to controlling state legislatures, the railroads had also helped design
    the original Interstate Commerce Commission, the first regulatory agency, to
    prevent states, like Washington, from legislating against the railroads' interests.
    Gabriel Kolko, RAILROADS AND REGULATIONS, 1877-1916 (1965).

10  The full text of this 1910 Charter's sections 81 and 82 (initiative legislation by
    the people), and 125 (Charter amendment) are provided in an Appendix to this
    brief, *infra*.

1    However, despite these attempts to preserve or reclaim the right of local

2    community self-government, courts proceeded to rule – using Dillon's Rule and the

3    Supremacy Clause – that preemption applies to all local laws, even when the local

4    law provides greater protection for the people's rights, health, safety, or welfare.

5    The Courts thereby weaponized preemption by making it a tool to prevent local

6    government police power from protecting the people. *See* National League of

7    Cities, *City Rights in an Era of Preemption: A State-by-State Analysis* 3 (Feb.

8    2017) (noting the political nature of preemption).[11] Thus, 19th century preemption

9    principles have usurped the people's fundamental right to use their government to

10   protect themselves. *See Conger v. Pierce County*, 116 Wash. 27, 35, 198 P. 377

11   (1921) ("It is probable that [government police] power is the most exalted attribute

12   of government, and, like the power of eminent domain, it existed before and

13   independently of constitutions."); *see also* Justice Philip A. Talmadge, *The Myth of*

14   *Property Absolutism and Modern Government: The Interaction of Police Power*

15   *and Property Rights*, 75 WASH. L. REV. 857, 859-60 (2000) ("Public-policy

16   disputes should remain in the popular branches of government.").

17   But in spite of the totalitarian reach of the preemption doctrine, the courts

18   now recognize that states can raise rights protections above the level provided by

19   the federal government. *E.g.*, *Pruneyard Shopping Ctr. v. Robins*, 447 U.S. 74

---

11 *Report available at* nlc.org/preemption.

(1980).[12] Federally-recognized rights form the floor, and states are able to protect people above that floor. *E.g.*, *State v. Sieyes*, 168 Wn.2d 276, 292, 225 P.3d 995 (2010) ("Supreme Court application of the United States Constitution establishes a floor below which state courts cannot go to protect individual rights. But states of course can raise the ceiling and afford greater protections under their own constitutions."). Now it is time to include charter cities, like Spokane, in this "new judicial federalism."[13]

This Court is capable of determining whether preemption constitutionally may apply to a city Charter that increases protections for people's rights, health, and safety. Thus, this Court can hear a claim for violation of the right of local community self-government. This claim is cognizable and cannot be dismissed on its face under Rule 12(b)(6).

> **2.** **ICCTA's exclusive preemption scheme violates Plaintiffs' right of local community self-government by preventing them from making laws to protect their rights, health, safety, and welfare.**

Here, Plaintiffs ask the Court for a declaration that ICCTA's preemption

---

12 Justice Brennan wrote a seminal article on this legal principle, which helped to usher in the study of State Constitutional Law and the principles of "new judicial federalism." William J. Brennan, Jr., *State Constitutions and the Protection of Individual Rights*, 90 Harv. L. Rev. 489 (1977).

13 "If a state standard-setting or regulatory law was considered to determine both the ceiling as well as the floor for regulation, there would be no space for local regulation once the state had acted.  That would choke off home rule and frustrate the democratic, decentralizing, and innovative goals that animate it." Richard Briffault, *Home Rule for the Twenty-First Century*, 36 Urban Lawyer 253, 264-65 (2004).

provisions are unconstitutional as-applied because they violate the Plaintiffs'

federal and state-guaranteed constitutional right of local community

self-government. (Compl., ¶¶ 60-80 (Counts Two and Three).) Count Two is based

on Plaintiffs' federal right, and Count Three is based on Plaintiffs' state right.

ICCTA violates both because, as stated in the Complaint:

> 66. The preemption provisions of the ICCTA infringe the constitutional right of the people of the City of Spokane to local community self-government because those preemption provisions eliminate the authority of the people of Spokane to adopt local laws to protect their rights, and their health, safety, and welfare, in any manner which would exceed the baseline standards set by federal law.

> 67. ICCTA preemption provisions act as a ceiling that limits the people of Spokane's ability to protect their rights, and their health, safety, and welfare, and those provisions therefore prevent the people of Spokane from using their government to protect themselves.

(*Accord* Compl., ¶ 79.) Plaintiffs have stated claims for violation of their right of

local community self-government by pleading facts that show that the U.S.,

through ICCTA's preemption provisions, prevents Plaintiffs from enacting local

laws to protect their rights, health, safety, and welfare.

**II.   Plaintiffs have standing to challenge ICCTA's scheme of preemption because that scheme prohibits them from exercising their right of self-government to protect their right to a liveable climate.**

In *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (citations

omitted, quote alterations in *Lujan*), the Court described the elements of standing:

> [T]he irreducible constitutional minimum of standing contains three elements. First, the plaintiff must have suffered an "injury in fact" – an

invasion of a legally protected interest which is (a) concrete and particularized, and (b) "actual or imminent, not 'conjectural' or 'hypothetical.'" Second, there must be a causal connection between the injury and the conduct complained of – the injury has to be "fairly . . . trace[able] to the challenged action of the defendant, and not . . . the result [of] the independent action of some third party not before the court." Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

Here, Plaintiffs are directly harmed by the preemptive provisions of ICCTA because it prohibits them from asserting their right of local self-governance to protect them from climate change. This Court can remedy that harm by finding that ICCTA's preemptive provisions violate the Plaintiffs' constitutional rights to a liveable climate and local self-government. Below, Plaintiffs describe in detail this harm, its causation, and this Court's ability to redress it.

**A.  Injury in Fact**

A plaintiff may possess a cognizable injury even if that injury is shared by all or part of the population, as long as the injury is still particular to the plaintiff. *Jewel v. NSA*, 673 F.3d 902, 909 (9th Cir. 2011); *Massachusetts v. EPA,* 549 U.S. 497, 517 (2007); *FEC v. Aikins*, 524 U.S. 11, 24 (1998); *Covington v. Jefferson Cnty.*, 358 F.3d 626, 651 (9th Cir. 2004) (Could, J., concurring) ("[T]he most recent Supreme Court precedent appears to have rejected the notion that injury to all is injury to none for standing purposes."); *see also Pye v. United States*, 269 F.3d 459, 469 (4th Cir. 2001) ("So long as the plaintiff . . . has a concrete and particularized injury, it does not matter that legions of other persons have the same

1  injury."). Injuries that are "ongoing or likely to recur" weigh in favor of a showing

2  that the plaintiffs' injuries are actual and imminent.

3  **1.  ICCTA's prohibition of local lawmaking guarantees a violation of**
4  **the Plaintiffs' constitutional right to a liveable climate, and**
5  **directly prohibits them from exercising their right of local**
6  **self-governance to protect themselves from climate change.**

7  The Plaintiffs took concrete steps to use the citizens' initiative process to

8  protect their constitutional right to a healthy climate, and ICCTA's preemptive

9  provisions stopped that process. (*See* Compl., ¶¶ 1-7, 13-29; *legal analysis in* ECF

10  No. 1-2 at 1-5 and No. 1-3 at 1-8.) Thus, the federal law (ICCTA) directly prohibits

11  the Plaintiffs from redressing the harms that they suffer due to fossil fuel

12  transportation through Spokane, and guarantees the violation of their constitutional

13  right to a healthy climate.

14  Plaintiffs' injury is not caused by the Spokane City Council's refusal to place

15  the Plaintiffs' initiative onto the ballot. Under the preemptive scheme established

16  by ICCTA, the City Council was left no other option. Plaintiffs' injury is directly

17  traceable to the federal laws' preemptive provisions, which leave both the city –

18  and the people of the city – powerless to adopt any law that protects their

19  constitutional rights. *Compare* Initiative 2016-2 (analyzed in ECF No. 1-2) *with*

20  Initiative 2016-6 (analyzed in ECF No. 1-3) (showing that ICCTA preemption

21  prevents regulation, not just prohibition, of fossil fuel trains).[14]

_____

14 Six of the Plaintiffs also blocked fossil fuel trains in acts of civil disobedience.

**2.    Plaintiffs have been injured by the environmental impacts of fossil fuel trains passing through Spokane, including through local air pollution and spill or explosion risks, as well as through increases in global greenhouse gas concentrations.**

Injury in fact requirements are met by a Plaintiff alleging impairment to economic interests, aesthetic and environmental well-being, or human health. *E.g.*, *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 183 (2000). Contrary to the Defendant's assertion that Plaintiffs lack standing because everyone is affected by greenhouse gas emissions (MTD at 12-14), the U.S. Supreme Court has already held that the widespread harm caused by greenhouse gas emissions does not present an Article III jurisdictional obstacle. *Massachusetts v. EPA*, 549 U.S. 497, 517 (2007). But that is not where Plaintiffs' only injuries lie.

Here, Plaintiffs have taken personal actions to stop fossil fuel trains "because [their] governments are not protecting [their] community's rights to climate, health, or safety." (Compl., ¶¶ 2-7.) Plaintiff Dr. Holmquist sponsored an initiative to prohibit fossil fuel trains "on the basis of the impact of those fossil fuels on climate change and public health and safety." (*Id.*, ¶ 1.) Plaintiffs are not just seeking to

_____

(Compl., ¶¶ 2-7.) This is not analogous to the *Clapper* plaintiffs who took "costly and burdensome measures to protect the confidentiality of their communications" from theoretical and hypothetical government surveillance. *Clapper*, 133 S. Ct. 1138, 1141 (2013) (dismissing those costs as "manufactur[ing] standing by choosing to make expenditures based on hypothetical future harm that is not certainly impending"). *Clapper's* plaintiffs might never be targeted by surveillance, whereas the Plaintiffs here are at higher risk for health impacts from fossil fuel trains in Spokane, face a certain increased likelihood of an oil train explosion, and are harmed by the effects of climate change.

redress the global impacts of climate change,[15] but also injury to local public

health[16] and safety.[17]

In addition, Plaintiffs are injured by ICCTA's preemption because they

cannot use their local government to protect their health, safety, and welfare. They

have tried to do so, and ICCTA has blocked their efforts.

**B. Causation**

Contrary to the Defendant's assertions (MTD at 15-17), a defendant's action

need not be the sole source of a plaintiff's injury, to satisfy standing requirements.

*E.g.*, *Barnum Timber Co. v. EPA*, 633 F.3d 894, 901 (9th Cir. 2011). A "causal

---

15 Compl., ¶ 31 ("The consequences of global warming and increased atmospheric greenhouse gas concentrations are already seen, including ocean acidification causing widespread coral bleaching and declining fisheries, rising sea levels with human displacement, chaotic weather patterns with record heat waves, droughts, fires, superstorms, and flooding, destabilizing agricultural systems, and ecosystem disruptions that are producing a sixth mass species extinction. These factors combined threaten the continued survival of human society.").

16 *E.g.*, Dr. Ethan Angell, *Dr. Ethan Angell: Coal trains elevate health risks*, THE SPOKESMAN-REVIEW (May 29, 2016), *available at* www.spokesman.com/stories/2016/may/29/dr-ethan-angell-coal-trains-elevate-health-risks/.

17 Oil trains are a public safety threat which travel daily through downtown Spokane; they are "almost moving bombs" according to Spokane's City Council President. *See, e.g.*, Scott Maben & Becky Kramer, *Oil by rail: Area leaders prep for disaster while calling for tougher standards*, THE SPOKESMAN-REVIEW (Jan. 19, 2014), *available at* www.spokesman.com/stories/2014/jan/19/oil-by-rail-area-leaders-prep-for-disaster-while/; *see also* Matthew Brown, *Thousands of defects found on oil train routes*, THE SPOKESMAN-REVIEW (Apr. 5, 2017), *available at* www.spokesman.com/stories/2017/apr/05/thousands-of-defects-found-on-oil-train-routes/ (noting the City of Spokane's inability to access the bridge inspection reports for the rail line in the city).

1 chain does not fail simply because it has several links, provided those links are not

2 hypothetical or tenuous and remain plausible." *Native Vill. Of Kivalina v.*

3 *ExxonMobil Corp.*, 696 F.3d 849, 867 (9th Cir. 2012) (quotation omitted).

4    The U.S. argues that "ICCTA's preemption provision neither controls the

5 legislative process in the City of Spokane nor causes climate change." (MTD at

6 15.) Contrary to the Defendant's position, however, the preemptive provisions do

7 both, and the Plaintiffs have stated a cognizable claim that it does.

8    First, ICCTA's preemptive provisions directly control the scope of the City's

9 lawmaking, and by extension, the scope of any citizens' initiative. Those

10 preemptive provisions have already been used by the City's Hearing Examiner to

11 rule that any local ordinance regulating the shipment of fossil fuels through the

12 City would be outside the scope of the City's lawmaking powers. (ECF Nos. 1-2,

13 1-3.) Indeed, the Washington Supreme Court now mandates that citizens' initiatives

14 be struck from the ballot if they exceed that scope. *See Spokane Entrepreneurial*

15 *Ctr. v. Spokane Moves to Amend the Const.*, 185 Wn.2d 97, 369 P.3d 140 (2016).

16 Thus, it is ICCTA's preemptive provisions themselves, and not the actions of the

17 City Council, that have caused injury.

18    The U.S. argues that Plaintiffs should have gone further with their initiative

19 if they want to have standing here. Namely, the U.S. says that Plaintiffs have not

20 shown sufficient causation because they have not gathered signatures on

1    Dr. Holmquist's proposed initiative, and the people of Spokane have not voted the

2    proposed initiative into law. (MTD at 15.) In making this argument, the U.S.

3    ignores the fact that these actions would be futile because Washington courts allow

4    pre-election challenges to the validity of a proposed initiative before it goes onto

5    the ballot. *E.g.*, *Seattle Bldg. & Constr. Trades Council v. City of Seattle*, 94 Wn.2d

6    740, 620 P.2d 82 (1980); *Philadelphia II v. Gregoire*, 128 Wn.2d 707, 911 P.2d 389

7    (1996); *Spokane Entrepreneurial Ctr.*, 185 Wn.2d 97, 369 P.3d 140 (also holding

8    that the standing inquiry is minimal in such pre-election challenges, which means,

9    here, that almost any party could prevent Dr. Holmquist's proposed initiative from

10   going on to the ballot).

11        Here, where a federal law like ICCTA would render the initiative invalid if

12   enacted by the people, the state court will enjoin that initiative from appearing on

13   the ballot even if it has been duly qualified with sufficient signatures.

14        Because Washington courts allow pre-election challenges to prevent

15   proposed initiatives that purportedly conflict with federal law, and because

16   ICCTA's complete preemption of local efforts to address the global and local harms

17   from fossil fuel transportation is undisputed and would lead to a certain outcome in

18   a pre-election challenge over one of these initiatives (*i.e.*, the state court would

19   enjoin the proposed initiative from appearing on the ballot), it would be futile for

20   Plaintiffs to gather signatures on the proposed initiative or submit them to the City.

1   The proposed initiative would certainly be challenged and enjoined from appearing

2   on the ballot.

3           Under the current interpretation of ICCTA preemption, further effort on the

4   initiative is futile. Standing does not require a plaintiff to perform a futile act. *E.g.*,

5   *Jackson-Bey v. Hanslmaier*, 115 F.3d 1091, 1096 (2d Cir. 1997) (citations omitted).

6           Second, ICCTA's preemptive provisions guarantee that climate change will

7   occur, by protecting and insulating the shipment (and therefore, extraction and

8   combustion of) fossil fuels that cause climate change.

9           Plaintiffs are harmed by climate destabilization, and the local environmental

10  health and public safety impacts, caused by fossil fuel trains passing through

11  Spokane.[18] (Compl., ¶¶ 1-7, 30-40.) They sought to remedy this harm. Notably, for

12  this causation inquiry, they proposed a law – through Spokane's initiative process –

13  to prohibit fossil fuel trains through Spokane. (Compl., ¶¶ 13-14, 17-18.) Further,

14  having met the obstacles imposed by ICCTA's preemption provisions, many of the

15  Plaintiffs then engaged in nonviolent civil disobedience by blocking some of the

16  trains traveling through the City. (Compl., ¶¶ 2-7.) In short, they have taken every

17  action they could to protect their right to a life-sustaining climate – either by

_____

18 Thus, this case is distinguishable from *Wash. Envtl. Council v. Bellon*, 732 F.3d
     1131, 1142 (9th Cir. 2013), where the plaintiffs' attempted to connect a minor
     change in technology on five refineries to climate change harms, without a local
     nexus, which was too attenuated to meet the standing causation element. That
     decision also applied a higher standard because the court considered standing at
     the summary judgment stage, rather than with a motion to dismiss. *Id.* at 1143.

attempting to exercise their right to local self-governance, or by physically stopping the rail transportation that violates their right to a healthy climate.

The causation chain is clear and precise: the federal law prohibits local laws that regulate fossil fuel trains in order to protect the Plaintiffs' constitutional right to a healthy climate, and prohibits local laws that would secure Plaintiffs' rights to live in a healthy and safe Spokane.

Plaintiffs have attempted to propose laws that would remedy the harm, but ICCTA's preemptive provisions prevent such laws. The federal law thus mandates that the violation of the Plaintiffs' right to a liveable climate continues, and it validates the ongoing violation of the Plaintiffs' right of local self-governance.

## C.  Redressability

Finally, standing requires redressability, which "analyzes the connection between the alleged injury and requested judicial relief." *E.g.*, *Wash. Envtl. Council*, 732 F.3d at 1146 (citation omitted). Here, Plaintiffs seek relief from this Court through an order that declares that ICCTA's preemptive provisions – which prohibit the Plaintiffs from adopting local laws that stop the harms caused by rail transportation of fossil fuels – violates the Plaintiffs' right to a healthy, life-sustaining climate, and the Plaintiffs' right to govern their local community to protect that right.

Determining when federal law violates the constitutional rights of the people

Response to Motion to Dismiss – 30 of 37

of the United States is wholly within the power of this Court. Plaintiffs have stated a claim that ICCTA's preemption provisions guarantee the violation of their right to a liveable climate, and Plaintiffs have requested that those preemptive provisions must be struck as a result.

### III. Sovereign immunity does not bar Plaintiffs' claims because this Court can grant the necessary relief.

The United States also argues that Plaintiffs' claims are barred by sovereign immunity. (MTD at 20-22.) But as explained below, "where federally protected rights have been invaded, it has been the rule from the beginning that courts will be alert to adjust their remedies so as to grant the necessary relief." *Bell v. Hood*, 327 U.S. 678, 684 (1946) (citing *Marbury v. Madison*, 1 U.S. (Cranch) 137, 162-63 (1803); additional citation omitted).

In *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, the United States Supreme Court considered whether a complaint for Fourth Amendment violations could be heard in federal court – or, stated in the inverse: whether sovereign immunity prevented such a claim since Congress had not explicitly authorized it. 403 U.S. 388 (1971). The Court reasoned that the Fourth Amendment was "an independent limitation upon the exercise of federal power." *Id.* at 394. Thus, a Fourth Amendment violation was "an independent claim both necessary and sufficient to make out the plaintiff's cause of action." *Id.* at 395 (citation omitted). The *Bivens* Court's holding affirms the principle that "'[t]he very

Response to Motion to Dismiss – 31 of 37

essence of civil liberty certainly consists in the right of every individual to claim the protection of the laws, whenever he receives an injury.'" *Id.* at 397 (quoting *Marbury*, 1 U.S. at 163).

Justice Harlan's concurrence emphasizes that these principles apply to equitable relief, not just money damages. Justice Harlan emphasized the preexisting "presumed availability of federal equitable relief" so long as there is "a substantive right derived from federal law." *Id.* at 400 (citations omitted). Such a right may "derive[] directly from the Constitution." *Id.* at 404, n. 5.

Here, the Plaintiffs have been injured by ICCTA's preemption scheme, and they come to this Court to "claim the protection of the laws" and receive a remedy. The Defendant's theory of sovereign immunity forbids that remedy until such time as Congress decides to authorize it. In other words, the United States argues that the same governmental body (Congress) that enacted a law that violates Plaintiffs' rights, also has the power to decide whether the courts can review the constitutionality of that same law. The Defendant's proposed construction of sovereign immunity strips the courts of their judicial review power, and thus allows Congress to trample – unchecked by the courts – the vertical separation of powers between federal and state/local lawmaking.

This Court can exercise its inherent equitable powers to review ICCTA's preemption provisions in this as-applied challenge. To rule otherwise would put

1  Congress in charge of deciding whether its own actions violate foundational

2  constitutional principles and the Constitution itself.

3  **Conclusion**

4       The United States' motion to dismiss should be denied. Plaintiffs have stated

5  cognizable claims, they possess standing to bring this action, and sovereign

6  immunity does not prevent their lawsuit.


Submitted this 9th Day of May, 2017.


Lindsey Schromen-Wawrin, WSBA #46352
Shearwater Law PLLC
Community Environmental Legal Defense Fund
306 West Third Street, Port Angeles, Washington 98362
(360) 406-4321, lindsey@world.oberlin.edu

*Attorney for Plaintiffs*

**Appendix: 1910 Spokane City Charter Provisions**

The provisions below are copied from a pamphlet titled "Charter of the City of Spokane State of Washington, Commission Form of Government, As Adopted December 28, 1910, with Additions and Amendments, published by the authority of the Commissioners of the City of Spokane (Printed August, 1946)," available at the Gonzaga Law Library.

ARTICLE IX.

LEGISLATION BY THE PEOPLE.

Section 81. **General Power:** The people of Spokane, in addition to the method of legislation hereinbefore provided, shall have power of direct legislation by the Initiative and the Referendum.

Section 82. **The Initiative:** The initiative shall be exercised in the following manner:

(a) **Petition:** A petition signed by registered and qualified electors of the city, accompanied by the proposed legislation or measure in the form of a proposed ordinance, and requesting that such ordinance be submitted to a vote of the people, if not passed by the council shall be filed with the clerk.

(b) **Clerk's Certificate:** Within two days from the filing of such petition the clerk shall certify the number of votes cast at the last general municipal election and the number of signers of such petition, and shall present such certificate,

1  petition and proposed ordinance to the council.

2  (c) **Action by Council Upon Petition – Fifteen Per Centum Petition:** If such

3  petition be signed by registered and qualified electors in number equal to 15 per

4  centum of the total number of votes cast at the last preceding general municipal

5  election, the council, within ten (10) days after the receipt thereof, except as

6  otherwise provided in this charter, shall either pass such ordinance without

7  alteration, or submit it to popular vote at a special election which must be held

8  within 30 days after the date of the ordering thereof. Provided, however, that if any

9  other municipal election is to be held within 60 days after the filing of the petition

10  said proposed ordinance shall be submitted without alteration to be voted upon at

11  such election.

12  **Less Than Fifteen Per Centum Petition:** If such petition be signed by

13  registered and qualified electors in number equal to five and less than 15 per

14  centum of the total number of votes cast at the last preceding general municipal

15  election and the said proposed ordinance be not passed by the council without

16  alteration before the commencement of publication of notice of the next municipal

17  election it shall be submitted to popular vote at such election. Provided, however,

18  that such petition must be filed at least 30 days before the date fixed for such

19  election. (As amended November 2, 1915.)

20  Section 83. **Referendum:** . . .

1 | . . .

2 | ARTICLE XIV.

3 | AMENDMENT.

4 | Section 135. **Amendment of the Charter.** This charter may be amended by

5 | majority vote on such amendments. The provisions of this charter, with respect to

6 | submission of legislation to popular vote by the initiative, or by the council of its

7 | own motion, shall apply to and include the proposal, submission and adoption of

8 | amendments.

9 | The council may make further regulations for carrying out the provisions of

10 | this article, not inconsistent herewith.

1                                    **Certificate of Service**

2          I certify that I electronically filed this document with the Clerk of the Court

3    for the United States District Court for the Eastern District of Washington by using

4    the Court's CM/ECF system on May 9, 2017.

5          The other party is a Filing User and is served electronically by the Notice of

6    Docket Activity.


       Dated: May 9, 2017

       Lindsey Schromen-Wawrin

       *Attorney for Plaintiffs*