CHAD A. READLER
Acting Assistant Attorney General

JOSEPH H. HARRINGTON
Acting United States Attorney

JACQUELINE COLEMAN SNEAD
Assistant Director, Federal Programs Branch

SERENA M. ORLOFF
Trial Attorney, U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, NW
Washington, DC 20001
Telephone: (202) 305-0167

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WASHINGTON**

| | |
|---|---|
| DR. GUNNAR HOLMQUIST, *et al.*, <br><br> Plaintiffs, <br><br> vs. <br><br> UNITED STATES, <br><br> Defendant. | No. 2:17-cv-00046-TOR <br><br> **DEFENDANT'S REPLY IN FURTHER SUPPORT OF MOTION TO DISMISS** <br><br> July 12, 2017 <br> Oral Argument |

## INTRODUCTION

As demonstrated in the United States' Motion to Dismiss, Plaintiffs' lack of success using the local citizens' initiative process and generalized interests in local climate change regulation do not support standing in this action challenging preemption under the ICC Termination Act of 1995 ("ICCTA") because they are not cognizable injuries caused by ICCTA preemption or redressable by a favorable decision in this case. Plaintiffs' response brief is largely nonresponsive to these points. All they have done is argue that climate change is a policy issue that concerns them and that one possible approach to regulating that issue at the local level—which may or may not be enacted by the City and may or may not have any effect on climate change—is foreclosed due to federal preemption under ICCTA. Because that purported grievance is neither personalized nor concrete and would be shared by all citizens who favor local climate or safety regulation in *any* area preempted by federal law, this action should be dismissed for lack of standing.

On the merits, Plaintiffs fare no better and they largely fail to address the United States' arguments that their claimed right to an exemption from ICCTA's preemptive effect in areas pertaining to climate and safety—premised on amorphous rights to "life," a "healthy climate," and local "self-governance"—ignores binding precedent and finds no support in *any court decision* even *Juliana v. United States*, 217 F. Supp.3d 1224 (D. Or. 2016). Moreover, Plaintiffs ignore the fact that the

Ninth Circuit has held ICCTA a valid exercise of the Commerce power that preempts state and local rail regulation, including regulations that seek to protect the environment. This action therefore should be dismissed.

## I.   Plaintiffs Have No Standing to Challenge ICCTA Preemption

Plaintiffs erroneously contend that "the first question for this Court. . . is determining whether there is a right to a livable climate," Pls.' Resp. Br. ("Resp.") at 7, ECF No. 15; rather, the threshold determination is standing, which Plaintiffs lack.

### A.   Climate Change and Generalized Public Safety Concerns Do Not Support Standing

Plaintiffs continue to base their claim to standing on generalized climate and safety concerns, but in so doing, they ignore the numerous cases cited in the United States' opening brief holding that a litigant must "possess a '*direct stake* in the outcome' of the case" and seek relief for a legally cognizable injury "that affects him in a '*personal and individual* way.'" *Hollingsworth v. Perry*, 133 S. Ct. 2652, 2662 (2013) (emphasis added; citations omitted); Def.'s Mot. ("Mot.") at 13-14, ECF No. 11. Thus, Plaintiffs' allegations of disruptions to oceans and ecosystems somewhere in the world do not equate to concrete harm suffered personally and individually by the Plaintiffs. *See, e.g.,* Resp. at 10 (alleging that climate change "threatens the Plaintiff's [sic] property, their economic livelihood, their recreational opportunities, their health, and ultimately their (and their children's) ability to live long, healthy

REPLY - 2

lives"). Rather, these are precisely the type of vague and "conclusory allegations" the Ninth Circuit has held "are not enough to establish the 'concrete and particularized' injury required for standing under Article III." *Escobar v. Brewer*, 461 F. App'x 535, 535-36 (9th Cir. 2011) (citation omitted); *see also Ctr. for Biological Diversity v. Dep't of Interior*, 563 F.3d 466, 478 (D.C. Cir. 2009) (rejecting theory of standing based on climate change because "climate change is a harm that is shared by humanity at large, and the redress that Petitioners seek—to prevent an increase in global temperature—is not focused any more on these petitioners than it is on the remainder of the world's population"); *Util. Reform Project v. Bonneville Power Admin.*, 869 F.2d 437, 447 (9th Cir. 1989) (affirming dismissal because plaintiffs did "not show[] any connection between themselves and any projected harm or injury to the environment").[1]

---

[1] In a footnote, Plaintiffs also contend—again vaguely—that they "are at a higher risk for health impacts from fossil fuel trains[.]" Resp. at 24 n.14. How or why that is so (and whether or not the "higher risk" pertains to climate change or some other amorphous safety concern, *see* Resp. at 26) is not clear, but in any event, the assertion finds no support in their Complaint, is not particularized to Plaintiffs, and does not describe a concrete legal harm. Three of the plaintiffs do not even live in Spokane, and none articulate any specific injurious impact of climate change or

REPLY - 3

Plaintiffs' reliance on *Massachusetts v. EPA*, 549 U.S. 497 (2007) is misplaced. In that case, Massachusetts claimed particularized harm—the permanent loss of state-owned coastline—and produced specific, unchallenged scientific evidence linking the loss of that state property to the regulatory action under review (regulation of greenhouse gas emissions). *Id.* at 522-25. Here, by contrast, Plaintiffs do not claim any tangible or personalized harm to their own interests resulting from global warming or coal and oil train safety, nor have they cited any facts suggesting a causative and redressable link between ICCTA's consolidation of rail regulatory jurisdiction in a federal agency and climate change or train safety. Nor are Plaintiffs' generalized concerns regarding climate change and public safety transformed into a personal injury simply because "Plaintiffs have taken personal actions to stop fossil fuel trains[.]" Resp. at 25. A plaintiff may not "manufacture standing," *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1151 (2013), merely by demonstrating on behalf of a cause they support.

Plaintiffs' response to the Government's demonstration of the lack of causation fares no better. Plaintiffs still fail to draw the requisite non-speculative causal connection between climate change and preemption under ICCTA. They

---

imminent public safety risk relating to their own lives, much less one attributable to oil and coal trains in Spokane. *See* Compl. ¶¶ 1-7.

REPLY - 4

assert in their Opposition that the "railway that passes through Spokane enables supplies of coal, oil, and natural gas to be extracted from the center of North America and exported through the terminals on the coast of the Pacific Northwest, for combustion in utilities in Asia and other regions," which "as one link in the extraction and combustion cycle, facilitates the destabilization of the global climate[.]" Resp. at 12-13.  But federal preemption of local rail regulation does not cause the "extraction and combustion cycle" of fossil fuels; human activities do. Because those activities involve "numerous third parties whose independent decisions collectively have a significant effect on plaintiffs' injuries, . . . the causal chain is too weak to support standing." *Washington Envtl. Council v. Bellon*, 732 F.3d 1131, 1141-42 (9th Cir. 2013).

For similar reasons, Plaintiffs also have not shown that the relief they seek here—declaratory relief that ICCTA is unconstitutional as applied to Dr. Holmquist's initiative and a court order allowing Spokane to ban fossil fuel trains in the City—will "significantly increase the likelihood," *Novak v. United States*, 795 F.3d 1012, 1019 (9th Cir. 2015), that ocean acidification, rising sea levels, ecosystem disruptions, and the "sixth mass extinction event in the Earth's history" will be redressed.  Resp. at 13.  Plaintiffs also provide no reason to believe that permitting cities to ban fossil fuel trains would shut down the "extraction and combustion cycle" of coal and oil, as opposed to merely resulting in the rerouting of those

REPLY - 5

commodities through other cities or via non-rail transit options. And while Plaintiffs may not be required to *prove* redressability with evidence at this stage, they must allege *facts* plausibly demonstrating the elements of causation and redressability. Conclusory leaps of logic based upon a "chain of speculative contingencies" do not suffice. *Alcoa, Inc. v. Bonneville Power Admin.*, 698 F.3d 774, 794 (9th Cir. 2012). Plaintiffs' claim to standing based on climate change and rail safety should therefore be rejected.

### B.  The Failure of Dr. Holmquist's Citizen's Initiative Does Not Support Standing to Challenge ICCTA

Plaintiffs' alternative basis for standing—the failure of Dr. Holmquist's citizen's initiative—ignores the numerous cases holding that the failure of proposed legislation is not a legal injury, Mot. at 12-13, and confuses ordinary aspects of the legislative process with a legal injury caused by ICCTA.  Dr. Holmquist may use the City's direct lawmaking process, but he has no right to a specific outcome of that process.  ICCTA's preemption provision does not, as Plaintiffs allege, "prohibit," "stop," or "block" Dr. Holmquist from introducing, gathering signatures in support of, and advocating on behalf of any law he supports, Resp. at 23, 24, 25; it merely limits the types of local laws that are legally effective if enacted by the City of

REPLY - 6

Spokane.[2]  Plaintiffs' assertion that they "would vote on [Dr. Holmquist's] initiative," Resp. at 5, is likewise unavailing.  An inability to vote for an initiative that has not met City requirements to be placed on the ballot is not the type of legal interest that can support standing.  *Cf. Atalig v. United States*, 554 F. App'x 662, 664 (9th Cir. 2014) (allegation that federal law prevented plaintiff from "affecting . . . policy through his vote" was "'precisely the kind of undifferentiated, generalized grievance[] about the conduct of government that we have refused to countenance

---

[2] Plaintiffs' contention that because of ICCTA, the City is "powerless to adopt any law that protects [its citizen's] constitutional rights," Resp. at 24, is neither accurate nor relevant.  First, while the City may be limited in its regulatory options due to ICCTA, it is not "powerless" to adopt "any law" protective of its citizens' rights. Second, even if ICCTA limits the City's ability to adopt certain types of regulation, neither the City nor its elected representatives would have standing to challenge that limitation in the abstract, untethered to any specific case or controversy, as Plaintiffs seek to do.  *See, e.g.*, *State of Ill. v. City of Chicago*, 137 F.3d 474, 477-78 (7th Cir. 1998) ("A role as lawmaker does not confer a role as litigant in federal court."). Third, regardless of the City's own standing, Plaintiffs are not agents of the City and they have no standing to assert its legislative interests in federal court. *Hollingsworth*, 133 S. Ct. at 2662-67; *see also* Spokane Mun. Code § 02.02.115.

REPLY - 7

in the past'" (citation omitted)). Plaintiffs' participation in the lawmaking process does not give rise to standing.³

## II. There Is No Right to a Supremacy Clause Exemption for Local Laws Pertaining to Climate and Safety

Plaintiffs' claims also fail as a matter of law. Plaintiffs' "livable climate" claim (Count 1) purportedly derives from the single wrongfully-decided decision in *Juliana v. United States*, 217 F. Supp. 3d 1224 (2016), but even that case did not hold that there is a fundamental right to be free of federal preemption in areas relating to climate change. It held merely that the government itself may not "*affirmatively and substantially* damag[e] the climate system." *Id.* at 1250. Plaintiffs allege no such affirmative and substantial damage by the government here.

Plaintiffs' "local community self-government" claims (Counts 2 and 3) likewise fail. While localities may enact greater protections beyond a federally-recognized "floor" in certain circumstances, Resp. at 20-21, it is well settled that the Supremacy Clause forecloses that outcome in the presence of federal preemption. *See, e.g.*, *Rosario-Cordero v. Crowley Towing & Transp. Co.*, 46 F.3d 120, 126 (1st Cir. 1995). Indeed, Plaintiffs concede that courts have "broadly interpreted the U.S.

---

³ Plaintiffs also lack a waiver of sovereign immunity. They invoke *Bivens*, Resp. at 31, but "*Bivens* suits are individual capacity suits and thus cannot enjoin official government action." *Solida v. McKelvey*, 820 F.3d 1090, 1094 (9th Cir. 2016).

REPLY - 8

Supremacy Clause to preempt all conflicting state or local law, even if . . . those laws [seek] to expand the civil and political rights of the people." Resp. at 16. Plaintiffs fail to address, however, the fact that the Ninth Circuit has *already held* that ICCTA preempts state and local environmental regulation. *City of Auburn v. U.S. Gov't*, 154 F.3d 1025, 1031 (9th Cir. 1998). Because that binding precedent forecloses the claims in Counts 2 and 3, they also should be dismissed as a matter of law.

## CONCLUSION

For the foregoing reasons and those explained in the Government's opening brief, this action should be dismissed with prejudice.

Dated: June 6, 2017    Respectfully submitted,

CHAD A. READLER
Acting Assistant Attorney General

JOSEPH H. HARRINGTON
Acting United States Attorney

JACQUELINE COLEMAN SNEAD
Assistant Director
Federal Programs Branch

*/s/ Serena Orloff*
SERENA ORLOFF
U.S. Department of Justice
Civil Division
Federal Programs Branch
20 Massachusetts Avenue, NW
Washington, DC 20001
Serena.M.Orloff@usdoj.gov
Telephone: (202) 305-0167
Facsimile: (202) 616-8470

REPLY - 9

*Counsel for Defendant*

REPLY - 10

# CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on June 6, 2017, I caused to be delivered via the method listed below the document to which this Certificate of Service is attached (plus any exhibits and/or attachments) to the following:

| NAME & ADDRESS | Method of Delivery |
|---|---|
| Lindsey Schromen-Wawrin<br>Shearwater Law PLLC<br>306 West Third Street<br>Port Angeles, WA 98362<br>360-406-4321<br>Fax: 360-752-5767<br>Email: lindsey@world.oberlin.edu | ☒CM/ECF System<br>☐Electronic Mail<br>☐U.S. Mail<br>☐Other: _____ |

*s/ Serena M. Orloff*
Serena M. Orloff

REPLY - 11