1

2

3

4

5

6

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

7

8

9

10

11

12

| | |
|---|---|
| GUNNAR HOLMQUIST, *et al*. | NO. 2:17-CV-0046-TOR |
| Plaintiffs, | |
| v. | ORDER GRANTING DEFENDANT'S MOTION TO DISMISS |
| UNITED STATES OF AMERICA, | |
| Defendant. | |

13    BEFORE THE COURT is Defendant's Motion to Dismiss for Lack of

14 Subject Matter Jurisdiction and Failure to State a Claim (ECF No. 11).  This matter

15 was submitted for consideration with oral argument.  The Court held a hearing on

16 July 12, 2017.  At the hearing, Lindsey Schromen-Wawrin represented Plaintiffs

17 and Serena M. Orloff represented the United States.  The Court has reviewed the

18 record and files herein, and is fully informed.  For the reasons discussed below,

19 Defendant's Motion to Dismiss (ECF No. 11) is **GRANTED**.

20 //

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS ~ 1

BACKGROUND

This case arises out of a failed initiative to ban the transportation of certain fossil fuels by rail through the city of Spokane.  Relevant to this case, Spokane encourages residents to take part in the legislative process by allowing its citizens to submit citizen's initiatives.  Spokane City Charter § 82.  Citizens submit the initiative by filing the proposed law with the City Clerk, who forwards the initiative to the City Council for consideration.  Spokane Municipal Code § 02.02.030.

The City Council "may pass the measure as proposed, reject [it] and propose another one dealing with the same subject to be considered as council legislation, or submit the initiative measure to the voters . . . ." *Id.* § 02.02.040. If the City Council "does not pass the measure as proposed or submit [it] to the voters," the initiative is forwarded to the City Hearing Examiner who must "issue a formal written opinion as to the legal validity and effect of the proposed measure . . . ." *Id*.  With the benefit of that analysis, the proponent can choose to revise the measure by withdrawing it and submitting a new one. *Id.*

Alternatively, the proponent may seek to bypass the City Council by collecting signatures from Spokane voters.  *Id.*  If the proponent is able to collect the signatures of at least five percent of the electorate, "the council shall either pass such ordinance without alteration or submit it to popular vote at the next available general municipal election."  Spokane City Charter § 82.

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS ~ 2

1

FACTS

2    Plaintiff Dr. Holmquist submitted two initiatives (Initiative Nos. 2016-2 and

3    2016-6) to amend the City Charter and City Code, respectively—the first on June

4    10, 2016, and the second on July 6, 2016.  ECF Nos. 1 at ¶¶ 13, 17; 1-2; 1-3.  The

5    initiatives sought to ban the transportation of coal and oil by rail within the City of

6    Spokane, citing concerns that such violated the "right of the people of Spokane to a

7    healthy climate."  ECF No. 1 at ¶¶ 14, 18.  The City Council took no action to

8    place the first initiative on the ballot and declined to place the second initiative on

9    the ballot, "citing concerns about federal preemption.  ECF No. 1 at ¶¶ 16, 19.

10    Spokane City Councilmember Breean Beggs introduced Resolution No.

11    2016-0064 on July 18, 2016 proposing a similar prohibition of the transit of certain

12    fossil fuels by rail within the City of Spokane.  ECF No. 1 at ¶ 20.  The Spokane

13    City Council voted unanimously to adopt the resolution, and requested that the

14    Spokane County Auditor hold a special election on November 8, 2017 for the

15    ballot proposition.  ECF No. 1 at ¶ 21.

16    On August 2, 2016, the Hearing Examiner for the City of Spokane issued a

17    legal opinion regarding Initiative 2016-6 opining that federal law would preempt

18    any attempt to restrict or prohibit the operations of a rail carrier and that a "ban on

19    the transport of oil and coal by rail is therefore outside the scope of the initiative

20    power."  ECF No. 1 at ¶¶ 22-23.  On August 15, 2016 Council President Ben

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS ~ 3

1  Stuckart, citing preemption concerns, introduced Resolution No. 2016-0071 to

2  rescind Resolution No. 2016-0064 and thereby withdraw the Spokane City

3  Council's request to the Spokane County Auditor for the placement of the

4  Resolution on the November 8, 2016, ballot.  ECF No. 1 at ¶¶ 24-25.  The City

5  Council adopted the resolution to rescind by a 5-2 vote.  ECF No. 1 at ¶ 26.  Later,

6  Councilmember Beggs filed a new initiative seeking – once again – to ban the

7  transit of coal and oil by rail through the City of Spokane, but the City Council

8  decided to take no action on the initiative.  ECF No. 1 at ¶¶ 26-28.

9                                   INTRODUCTION

10        The parties do not dispute that the Interstate Commerce Commission

11  Termination Act of 1995 (ICCTA) preempts the proposed initiatives.  The dispute

12  centers on whether – as Plaintiffs argue – the preemptive effect violates Plaintiff's

13  purported constitutional right to a livable and healthy climate by prohibiting

14  Plaintiffs from passing legislation that would curb the purported deterioration of

15  the climate.  Defendant has moved the Court to dismiss the action for failure to

16  state a claim and lack of standing.  The Court finds Plaintiffs claim fails on

17  justiciability grounds because the issue is not ripe, fails for lack of standing, and

18  any relief requested would amount to an advisory opinion; the Court need not

19  address the remaining contentions.

20  //

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS ~ 4

LAW ON JUSTICIABILITY

The jurisdiction of federal courts is defined and limited by Article III of the Constitution, which extends judicial Power to cases and controversies.  *Flast v. Cohen*, 392 U.S. 83, 94 (1968).  This forms the basis for the judicial doctrine of justiciability—"the term of art employed to give expression to this dual limitation placed upon federal courts by the case-and-controversy doctrine."  *Flast*, 392 U.S. at 95.  "Justiciability is itself a concept of uncertain meaning and scope."  *Id.* Courts have mixed judicial prudence[1] with this limitation[2] on judicial power and crafted specific categories of justiciability, including: advisory opinions, feigned and collusive cases, standing, ripeness, mootness, political questions, and administrative questions.  *See Flast*, 392 U.S. at 95; Justiciability, 13 Fed. Prac. & Proc. Juris. § 3529 (3d ed.) (citing cases).  Notably, these categories are not

---

[1]    *Joint Anti-Fascist Refugee Committee v. McGrath*, 341 U.S. 123, 156 (1951) (concurring opinion) ("Whether 'justiciability' exists . . . has most often turned on evaluating both the appropriateness of the issues for decision by courts and the hardship of denying judicial relief.").

[2]    *Hodgson v. Bowerbank*, 9 U.S. 303, 304 (1809) ("Turn to the article of the constitution of the United States, for the statute cannot extend the jurisdiction beyond the limits of the constitution.").

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS ~ 5

mutually exclusive, and "the same concerns often can be reflected in the language of two or more of these categories."  13 Fed. Prac. & Proc. Juris. § 3529.

1.  Standing

The party invoking a federal court's jurisdiction must demonstrate it has standing.  *Wittman v. Personhuballah*, 136 S. Ct. 1732, 1736 (2016) (citing *Arizonans for Official English v. Arizona,* 520 U.S. 43, 64 (1997)).  "A party has standing only if he shows that he has suffered an 'injury in fact,' that the injury is 'fairly traceable' to the conduct being challenged, and that the injury will likely be 'redressed' by a favorable decision."  *Wittman*, 136 S. Ct. at 1736 (citing *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–561 (1992)).  "[T]he injury or threat of injury must be 'real and immediate,' not 'conjectural' or 'hypothetical.'"  *City of Los Angeles v. Lyons*, 461 U.S. 95, 95 (1983).

2.  Ripeness

"Ripeness is peculiarly a question of timing."  *Thomas v. Union Carbide Agr. Prod. Co.*, 473 U.S. 568, 580 (1985) (brackets omitted) (quoting *Blanchette v. Connecticut Gen. Ins. Corps.*, 419 U.S. 102, 140 (1974)).  "A claim is not ripe for adjudication if it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'"  *Id.* at 580-581 (quoting 13A C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 3532 (1984)).  "[I]f the contingent events do not occur, the plaintiff likely will not have suffered

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS ~ 6

an injury that is concrete and particularized enough to establish the first element of standing . . . In this way, ripeness and standing are intertwined." *Bova v. City of Medford*, 564 F.3d 1093, 1096 (9th Cir. 2009) (citing Lujan, 504 U.S. at 560).

    3.  <u>Advisory Opinions</u>

       "[T]he oldest and most consistent thread in the federal law of justiciability is that the federal courts will not give advisory opinions." *Flast,* 392 U.S. at 96 (internal quotations and citation omitted). Under Article III, Federal courts are confined to "real and substantial controversies admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990) (citations and brackets omitted). "In any case the Court will not pass upon the constitutionality of legislation in a suit which is not adversary, or upon the complaint of one who fails to show that he is injured by its operation, or until it is necessary to do so to preserve the rights of the parties." *Coffman v. Breeze Corp.*, 323 U.S. 316, 324-25 (1945) (citations omitted). Relevant to this case, "[t]he declaratory judgment procedure is available in the federal courts only in cases involving an actual case or controversy, where the issue is actual and adversary, and it may not be made the medium for securing an advisory opinion in a controversy which has not arisen." *Coffman*, 323 U.S. at 324 (citations omitted).

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS ~ 7

DISCUSSION

At its base, Plaintiffs complaint alleges: ICCTA "prohibits local laws" – in this case, laws prohibiting the transit of certain fossil fuels by rail – that would secure Plaintiff's right to live in a healthy and safe Spokane and this undermines – and thus infringes on – Plaintiff's purported constitutional right to a livable habitat. *See* ECF Nos. 1; 15. In other words, (1) the federal law prohibits local laws (2) that would secure (3) Plaintiff's right to live in a healthy and safe Spokane.

First, of special import here, the federal law does not *prohibit* the passing of local laws. Rather, it may only preempt certain law's application. This distinction highlights the impropriety of deciding the merits of this case—because there has been no preemption, there has been no harm in fact traceable to ICCTA, the issue is not ripe for review, and any relief would amount to an advisory opinion and fail to redress Plaintiffs' concern.

There has been no harm traceable to ICCTA and the issue is not ripe because the challenged law has not been applied—*i.e* there has been no injury by its operation. *Coffman*, 323 U.S. at 324-25. Accordingly, deciding the case now is not necessary and would not cause any significant hardship on Plaintiffs. *Id.*; *Joint Anti-Fascist Refugee Committee*, 341 U.S. at 156. While the City Council cited preemption concerns in their ultimate decision not to place the initiatives on the ballot, this was based on a legal opinion by a third party, not an actual application

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS ~ 8

of the statute. [3]  Notably, the opinion also cited concerns that the measure would strip business entities of legal rights, an "outcome [that] cannot be squared with the constitution or the associated case law."  ECF No. 1-2 at 10.

Further, Plaintiffs could have attempted to circumvent the City Council by garnering support from five percent of the electorate, which would have placed the measure on the ballot regardless of any legal opinion.  This seriously undermines any claim that that ICCTA is preventing the initiative from passing, as opposed to the Plaintiffs' lack of effort.  Plaintiffs argue that pursuing the initiative through support of the electorate would be futile because third parties can bring suit challenging the legality of the initiative based on preemption.  This potential does not render this avenue of action futile—rather, it highlights why this action is premature.  If the initiative were placed on the ballot, any legal challenge would

---

[3]      "[T]he 'case or controversy' limitation of Art. III requires that a federal court act only to redress injury that fairly can be traced to the challenged action of the defendant, and not injury that results from the independent action of some third party not before the court."  *Simon v. E. Kentucky Welfare Rights Org*., 426 U.S. 26, 41-42 (1976); *see also Washington Envtl. Council v. Bellon*, 732 F.3d 1131, 1141 (9th Cir. 2013).

bring the present issue front and center, as Plaintiffs would be able to defend the

initiative based on the arguments posed here.[4]

---

[4]     Plaintiffs argue that their right to self-governance is being infringed because

federal law preempts state and local laws.  For the reasons discussed above, this is

not the case.  Moreover, Plaintiffs are not precluded from influencing state and

federal legislation, which are likely the best avenues where any concern for the

climate can be addressed on a state or national scale.  Importantly, we have a

representative government at the federal level—even if Plaintiffs' power to change

and create laws are diluted, this is the nature of our well-established system of laws

and self-governance by representation.  It is noteworthy that Plaintiffs did not even

exercise the rights available to them.  Plaintiffs could have tried to convince the

City Council that the law would not be preempted because such would be

unconstitutional; and Plaintiffs could have sought the requisite votes to get the

initiative on the ballot.  Further, other avenues of redress exist.  For example, "to

the extent that state and local agencies promulgate EPA-approved statewide plans

under federal environmental laws (such as 'statewide implementation plans' under

the Clean Air Act), ICCTA generally does not preempt those regulations because it

is possible to harmonize ICCTA with those federally recognized regulations."

*Ass'n of Am. Railroads v. S. Coast Air Quality Mgmt. Dist.*, 622 F.3d 1094, 1098

Similarly, the requested relief – *i.e.* declaring ICCTA's preemptive effect unconstitutional – would only amount to an advisory opinion and would not redress Plaintiffs' claimed injury.  Without a concrete application of the statute at issue, any opinion and corresponding order would have no immediate effect, but would rather amount to an advisory opinion as to whether *future* legislation would be preempted.  Whether a similar initiative will be placed on the ballot in the future and whether the proposed law would be passed is speculative, at best.  As such, Plaintiffs' claim rests upon "contingent future events that may not occur as anticipated, or indeed may not occur at all."  *Thomas*, 473 U.S. at 580-581 (1985) (internal quotations and citation omitted).  In the words of the Supreme Court, "[w]e can only hypothesize that such an event will come to pass, and it is only on this basis that the constitutional claim could be adjudicated at this time.  An opinion now would be patently advisory . . . ."  *Babbitt v. United Farm Workers Nat. Union,* 442 U.S. 289, 304 (1979).

_____

(9th Cir. 2010); *see also Quinault Indian Nation v. Imperium Terminal Servs., LLC*, 187 Wn.2d 460, 469 (2017) (the Washington Ocean Resources Management Act is "a balancing tool intended to be used by local government to weigh the commercial benefits of coastal development against the State's interest in protecting coastal habitats and conserving fossil fuels.").

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS ~ 11

Second, Plaintiffs' claim of harm is not fairly traceable to ICCTA and any relief requested would not redress the purported harm.  Plaintiffs' argument is premised on a causal link (1) from ICCTA to the failure of the initiative to pass and (2) from the failed initiative to general global warming.  The first link fails to hold because ICCTA did not prevent the legislation from passing, as discussed above.  *Bellon*, 732 F.3d at 1142 ("where the causal chain involves numerous third parties whose independent decisions collectively have a significant effect on plaintiffs' injuries, . . . the causal chain is too weak to support standing.") (citation omitted) .

The second link – the causal connection between the failed initiatives and Spokane's climate - is tenuous, at best.  Plaintiffs do not argue that the mere transit of fossil fuels through Spokane harms the environment.  *See* ECF No. 1.  Rather, Plaintiffs rely on the purported fact that the *use* of fossil fuels is contributing to global warming, which – as Plaintiffs argue – will eventually lead to mass extinction.  Plaintiffs' position is premised on the idea that banning transportation of certain fossil fuels through Spokane will create a choke point and effectively throw a wrench in the cogs of the fossil fuel industry—thereby leading to less extraction and combustion due to the inability to transport the fossil fuels.  This causal chain is too attenuated to establish standing—it is not the transit, but the combustion, that purportedly causes climate change.  Importantly, Plaintiffs cannot

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS ~ 12

rely on "vague, conclusory statements" that ICCTA preemptive effect "contributes to greenhouse gas emissions, which in turn, contribute to climate-related changes that result in their purported injuries." *Bellon*, 732 F.3d at 1142. Although an avalanche of similar legislation across the country may achieve Plaintiffs' goal, this possibility is highly questionable and purely speculative. Indeed, the proposed legislation may even increase fossil fuel emissions if trains must travel around Spokane or if the fossil fuel is delivered by truck. *Lewis,* 494 U.S. at 477 ("Article III denies federal courts the power 'to decide questions that cannot affect the rights of litigants in the case before them . . . .'") (quoting *North Carolina v. Rice,* 404 U.S. 244  (1971)).

## AMENDMENT OF THE COMPLAINT

At oral argument, Plaintiffs' counsel conceded that Plaintiffs have put their best foot forward with respect to the complaint[5]; and when the Court asked whether amendment of the complaint would be futile, Plaintiff's counsel did not

---

[5]    THE COURT:  Okay.  I understand your argument and I, from your argument, I don't see that you need leave to amend . . .  I take it there isn't any other allegation you could make in response to the government's motion to dismiss.

MR. SCHROMEN-WAWRIN:  That's right, Your Honor.

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS ~ 13

bring any additional argument or facts suggesting an amendment would be anything other than futile.

## CONCLUSION

Plaintiffs have brought this claim before the statute at issue has been enacted and have failed to plausibly show that the relief they request will achieve their concern for a healthy and safe Spokane.  Amendment would be futile, so the Court is **GRANTING** Defendant's Motion to Dismiss **without leave to amend**.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction and Failure to State a Claim (ECF No. 11) is **GRANTED**.

2. The District Court Executive is directed to **ENTER** this Order and Judgment accordingly, furnish copies to counsel, and **CLOSE** the file.

3. The deadlines, hearings and trial date are **VACATED**.  Each party to bear its own costs and expenses.

**DATED** July 14, 2017.



THOMAS O. RICE
Chief United States District Judge

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS ~ 14